IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Rhonda Hutto Bull, ) | |
| ) | Civil Action No. 6:12-03197-DCN-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[2]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits ("DIB") on February 7, 2010, alleging that she became unable to work on March 4, 2003. The application was denied initially and on reconsideration by the Social Security Administration. On July 28, 2010, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff along with her husband, Dr. Steven Bull, appeared on March 3,

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed.R.Civ.P. 25(d), Colvin should be substituted for Michael J. Astrue as the defendant in this case.

[2] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2011, considered the case *de novo*, and on March 17, 2011, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied review on September 11, 2012. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)   The claimant last met the insured status requirements of the Social Security Act on September 30, 2009.
>
> (2)   The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 4, 2003, through her date last insured of September 30, 2009 (20 C.F.R. § 404.1571 *et seq.*).
>
> (3)   Through the date last insured, the claimant had the following severe impairments: status post-lumbar herniated disc operation (20 C.F.R. § 404.1520(c)).
>
> (4)   Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> (5)   After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light[3] work as defined in 20 C.F.R. § 404.1567(b) with only occasional climbing of ladders, ropes, and scaffolds and occasional stooping, crouching and crawling. I have further determined that the claimant would be limited to simple, routine repetitive tasks

---

[3] Light work activity involves lifting and carrying up to 20 pounds occasionally and 10 pounds frequently with walking/standing at least six hours in an eight-hour day with sitting the remainder of the time.

2

based on her allegations of pain that would affect concentration.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

(7) The claimant was born on July 12, 1955, and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 C.F.R. § 404.1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 404.1564).

(9) Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*see* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 C.F.R. §§ 404.1569 and 404.1569(a)).

(11) The claimant was not under a disability, as defined in the Social Security Act, from March 4, 2003, the alleged onset date, through September 30, 2009, the date last insured (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

**APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment.  20 C.F.R. § 404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff

4

can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff experienced intermittent lower back pain in the years leading up to her alleged onset date (Tr. 175). In July 2002, Dr. Stephen Rawe of Charleston

Neurological Associates noted that the plaintiff's problems related to a central L4-5 disc protrusion (Tr. 176). At that time, the plaintiff's impairment did not cause any significant nerve root compression, she was not a surgical candidate, and she was instructed to increase her functional activity and possibly pursue epidural steroid injections (Tr. 176). The plaintiff's problems persisted, and on January 23, 2003, she was told that she could continue with conservative care with or without steroid injections or pursue surgery (Tr. 177).

   The plaintiff decided to pursue surgery and underwent a lumbar inter-body fusion by Dr. Rawe on March 4, 2003 (Tr. 193). Following this surgery, the plaintiff continued to experience some lower back pain, but related pain in her lower extremities totally resolved. By May 2003, the plaintiff was power walking five miles per day. Dr. Bull, the plaintiff's husband and treating source, encouraged her to cut back on her walking given that the intensity and pounding of this activity was likely the cause of her back pain (Tr. 178). By September 2003, the plaintiff's pain was limited to her lower back but was controlled with medication (Tr. 179). By December 2003, the plaintiff reported moderate discomfort in her lower back, but displayed good range of motion, no obvious weakness in her lower extremities, and straight leg raising was negative (Tr. 180, 209-10). Dr. Bull then ordered spine films to determine if the plaintiff could try snow skiing (Tr. 180). Physical therapy records at that time evidenced pain with *increased* activity; no issues with the plaintiff's gait; no limitation in lumbar flexion or extension; and no problems with lower extremity range of motion, flexibility, strength, or reflexes (Tr. 368).

   Trident Regional Medical Center's Dr. Ronald A. Piaskowski reviewed a July 15, 2003, MRI of the lumbar spine that showed mild nerve root enhancement best seen within the neural foramen (left L5 nerve root greater than right) (Tr. 188). Dr. Piaskowski noted probable mild anterior Grade I Spondylolistheses of L5 with respect to S1; transitional vertebral body; postsurgical, chronic and degenerative changes (Tr. 185).

6

Dr. Rawe also reviewed the July 15, 2003, lumbar MRI, which showed the pedicle screw at L4 on the right side to be in the pedicle but also partially out of the lateral part of the vertebral body. He believed that the pedicle screw at that level was adequate for the compression needed for the posterior lumbar interbody fusion (Tr. 179).

After 2003, the plaintiff reported ongoing back, hip, and right leg pain ranging from a 2 to 5 on a pain scale of 1 to 10 (Tr. 316-27, 389, 391). The record reflects that the plaintiff was diagnosed with lumbar radiculitis due to ongoing lower back pain, for which she underwent a number of blocks, epidural steroid injections, and left sacroiliac joint injections by Dr. Netherton (Tr. 221-36, 268-339, 373-85). Dr. Netherton noted the plaintiff had an antalgic gait on January 13, 2010, July 25, 2008, March 23, 2008, January 21, 2008, May 5, 2007, December 1, 2005, and November 8, 2004. He indicated the plaintiff's gait was normal on February 19, 2004. Dr. Netherton noted in July 2005 that the plaintiff, a power walker, could walk 12 miles a day before her March 2003 surgery. After surgery, she attempted to walk three miles and thereafter was basically incapacitated for two weeks due to increased pain (Tr. 343).

Dr. Kerri A. Kolehma at Coastal Physical Medicine noted the plaintiff sustained excessive bone growth following her laminectomy/fusion, causing numbness, back spasms, and excruciating pain. From July 2005 to March 2010, Dr. Kolehma provided a number of Botox injections for the plaintiff at the plaintiff's own expense. These injections improved the plaintiff's overall ability to function, walk standing erect, and to participate in family activities. The plaintiff explained that the relief typically lasted 10 to 12 weeks. Given that she responded so well to these injections, in April 2009, Dr. Kolehma recommended that she continue to receive them every 90 days and requested that the plaintiff's insurance carrier find that Botox injections were medically necessary and cover the cost of the quarterly injections (Tr. 341-42).

Outside of the injections by Dr. Netherton and by Dr. Kolehma, the plaintiff was treated by her husband Dr. Bull for her radicular pain since her surgery until the date of the hearing (Tr. 237-53; 370-72).

On April 19, 2010, Dr. Jim Liao reviewed the plaintiff's medical records and offered his impartial expert medical opinion regarding the plaintiff's residual functional capacity ("RFC") (Tr. 355-62). Dr. Liao recognized that after the plaintiff's surgery she required ongoing pain management through epidural injections (Tr. 362). Though Dr. Liao fully credited the plaintiff's allegation that she experience ongoing back pain (Tr. 360), he also referenced medical evidence establishing that her treatment through therapy and injections had a "big difference" and worked great on her back and legs. Dr. Liao opined that, "[a]lthough functional evidence cannot be obtained for the time period in question, the continuous and ongoing treatment for pain along with L4-L5 fusion in 2002 warrants a light rating with [occasional] stoop/crouch/crawl and ladders/ropes/scaffolds limitations" (Tr. 362). In June 2010, Drs. Lisa Clausen and Joseph Gonzalez also reviewed the plaintiff's records and concurred with Dr. Liao's opinion (Tr. 363-64).

On February 17, 2011, Dr. Bull offered his medical opinion about the plaintiff's level of functional limitation since April 2003 (Tr. 413-18). Citing the plaintiff's back pain, he explained that the plaintiff could only lift and carry up to ten pounds occasionally; sit for two hours, stand for one hour, and walk for one hour in an eight-hour workday; would need to spend four hours of each eight-hour workday laying down; frequently handle, finger and feel; occasionally reach in all directions, and push and pull; occasionally operate foot controls; occasionally climb stairs/ramps, and kneel; never climb ladders or scaffolds, balance, stoop, crouch or crawl; never work at unprotected heights, around moving machinery, or near vibrations; occasionally operate a motor vehicle, be around humidity, and have exposure to extreme cold and heat; and not travel alone or walk at a reasonable pace on rough or uneven surfaces (Tr. 413-18).

On February 22, 2011, Dr. Netherton also offered his opinion regarding the plaintiff's functional limitations.[4] He opined that the plaintiff could only sit for one hour at a time before needing to walk for less than 15 minutes, but that the plaintiff could only sit for three hours total in an eight-hour workday (Tr. 422). He also opined that the plaintiff could only stand/walk for one hour at a time before needing to lay down for 15 minutes, but that she could only stand/walk for two hours total in an eight-hour workday. He opined that normal work breaks would be insufficient to satisfy the plaintiff's needs (Tr. 423) and that she would be absent more than three times a month due to her impairment (Tr. 424). In a letter dated June 20, 2011, Dr. Netherton reiterated that he believed the plaintiff was not capable of any substantial gainful activity (Tr. 427-28).

At the March 3, 2011, hearing, the plaintiff testified that she has been disabled since her back surgery on March 4, 2003. She explained that she last worked as an administrative assistant at her husband's medical practice (Tr. 25-26). She also testified to past work teaching algebra (Tr. 26-27).

The plaintiff testified that the main reason she cannot work relates to problems with the muscles and nerves in her back (Tr. 27-28). She stated that her pain was chronic at a level of 8 or 9 out of 10. She noted that she receives treatment through injections, but stated that this treatment only gives her "a little bit of life back." However, she admitted that when these injections took affect they could reduce her pain to 5 out of 10 (Tr. 28-29). The plaintiff also explained that she has dealt with some sort of constant debilitating pain since 2003 (Tr. 32, 35). She testified that she drives approximately seven miles to Pilates class twice a week (Tr. 34).

---

[4]Dr. Netherton's opinion was submitted to the Appeals Council after the ALJ rendered his decision (Tr. 4).

**ANALYSIS**

The plaintiff argues that the ALJ erred by (1) failing to conclude that her lumbar radiculitis (right sided radiculopathy) was a severe impairment; (2) failing to credit the conclusions of her treating physician, Dr. Bull, regarding standing and walking limitations, where Dr. Bull's conclusions are supported by Dr. Netherton's treatment notes; (3) failing to fully and fairly develop the record when he disregarded the opinion of Dr. Bull on the basis of bias without securing testimony of a medical expert; (4) failing to properly evaluate her subjective allegations of pain that limits her ability to stand and walk; and (5) failing to consider that she was disabled under Medical-Vocational Guideline 201.14 as of July 12, 2005, her 50th birthday.

*Severe Impairment*

The plaintiff first argues that the ALJ erred by failing to find that her lumbar radiculitis was a severe impairment. At step two of the sequential evaluation process, the ALJ found that the evidence of record supported a finding that the plaintiff's "status post-lumbar herniated disc operation" was a severe impairment (Tr. 11). The Commissioner argues in response that radiculitis is subsumed under the severe impairment that the ALJ did find and that even if the ALJ erred in not finding the plaintiff's radiculitis was a severe impairment, the error is harmless (def. brief at 8). This court agrees.

The ALJ expressly found that, since her surgery in March 2003, the plaintiff continued to suffer from a "back condition, which is a severe impairment," that caused ongoing low back pain and required various injections (Tr. 13). As argued by the Commissioner, because lumbar radiculitis was the plaintiff's only ongoing "back condition" - and the plaintiff does not argue otherwise - the ALJ's reference was sufficient to demonstrate his consideration of the impairment when assessing the plaintiff's RFC.

Furthermore, if an ALJ commits error at step two, it is rendered harmless so long as the ALJ properly concludes that the claimant cannot be denied benefits at step two,

but rather continues to the next step of the sequential evaluation process. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (holding that any error at step two of the sequential evaluation process becomes harmless if the ALJ "reached the proper conclusion that [the claimant] could not be denied benefits at step two and proceeded to the next step of the evaluation sequence"). Here, the ALJ found the plaintiff had a severe back impairment and proceeded to the next step of the sequential evaluation process. Accordingly, any allegation of error in this regard is harmless.

***Treating Physician***

The plaintiff next argues that the ALJ erred in his evaluation of the opinion of one of her treating physicians, Dr. Bull. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6) whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* § 404.1527(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 404.1527(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Social Security Ruling

("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5. As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

As set forth above, on February 17, 2011, Dr. Bull offered his medical opinion about the plaintiff's level of functional limitation since April 2003 (Tr. 413-18). Citing the plaintiff's back pain, he explained that the plaintiff could only lift and carry up to ten pounds occasionally; sit for two hours, stand for one hour, and walk for one hour in an eight-hour workday; would need to spend four hours of each eight-hour workday laying down; frequently handle, finger and feel; occasionally reach in all directions, and push and pull; occasionally operate foot controls; occasionally climb stairs/ramps, and kneel; never climb ladders or scaffolds, balance, stoop, crouch or crawl; never work at unprotected heights, around moving machinery, or near vibrations; occasionally operate a motor vehicle, be around humidity, and have exposure to extreme cold and heat; and not travel alone or walk at a reasonable pace on rough or uneven surfaces (Tr. 413-18).

In affording little weight to Dr. Bull's opinion, the ALJ explained that he could find little support in the record for the levels of limitation that Dr. Bull assessed (Tr. 14). The plaintiff argues that Dr. Bull's opinion, and specifically the standing and walking limitations he assessed, are supported by the fact that she required frequent Botox and steroid injections from Drs. Netherton and Kolehma to manage her pain following surgery (pl. brief

at 11). However, the ALJ specifically considered the plaintiff's frequent injections and noted:

> Although the claimant is status post lumbar spine surgery and has various injections and rhizotomies since this surgery, examinations have routinely revealed that the claimant had no weakness of the lower extremity muscle groups, negative straight leg raise, normal/good deep tendon reflexes and no muscle atrophy.

(Tr. 14 (citing Tr. 172-87, 237-53, 268-339, 340-51)).

The plaintiff also argues that the ALJ unfairly found that Dr. Bull was biased because he is her husband (pl. brief at 10). However, as argued by the Commissioner, although the ALJ noted that Dr. Bull is the plaintiff's husband, he did not find that this fact made it impossible for Dr. Bull to render an impartial opinion. Rather, the ALJ properly focused on the lack of support for the levels of limitation Dr. Bull assessed (Tr. 14). Moreover, also as noted by the Commissioner, the nature of the treating relationship between a claimant and treating physician is a proper consideration for the ALJ. *See* 20 C.F.R. § 404.1527(c)(2)(ii) (noting that in weighing a medical opinion the Commissioner considers the nature and extent of the treatment relationship).

The plaintiff further argues that records from Dr. Netherton provide objective evidence of the plaintiff's antalgic gait, which supports Dr. Bull's opinion regarding her standing and walking limitations (pl. brief at 11 (citing Tr. 316-24)). Importantly, however, the record also demonstrates evidence of no problems with the plaintiff's gait during the same period (Tr. 242, 317, 324, 344). Moreover, the ALJ did not find that the plaintiff had no limitations in standing or walking; he found that she did not have the levels of limitation that Dr. Bull assessed. Three independent and impartial medical experts, Drs. Liao, Clausen, and Gonzalez, reviewed the plaintiff's treatment records, including references to her antalgic gait, and concluded that she was limited to light work activity with occasional climbing of ladders, ropes, and scaffolds and occasional stooping, crouching, and crawling

(Tr. 355-62, 363-64). Their findings are consistent with the RFC found by the ALJ (Tr. 14). The ALJ was required to "consider findings and other opinions of State agency medical and psychological consultants . . ., except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(e)(2)(i). In addition, an ALJ may rely on non-examining physicians' opinions if they are consistent with the record, as they were in the present case. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

Based upon the foregoing, the undersigned finds that the ALJ did not err in his evaluation of Dr. Bull's opinion, and the ALJ's findings are supported by substantial evidence.

***Medical Expert***

The plaintiff next argues that the ALJ failed to fully and fairly develop the record when he disregarded Dr. Bull's opinion on the basis of bias without securing the testimony of a medical expert. The court observes that the plaintiff was represented by counsel at her hearing before the ALJ (Tr. 21). Further, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and the plaintiff has failed to demonstrate that this record is incomplete. *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir.1994) (cited in *Bell v. Charter*, No. 95-1089, 1995 WL 347142, at *4 (4th Cir.1995). As discussed above, the record contains extensive evidence and opinions from reviewing medical experts not present at the hearing, which support the ALJ's RFC finding (Tr. 355-62, 363-64).

*Credibility*

The plaintiff next argues that the ALJ erred in evaluating her subjective complaints. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its

15

> severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

16

> (1)  the individual's daily activities;
>
> (2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)  factors that precipitate and aggravate the symptoms;
>
> (4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)  any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)  any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ found that while the plaintiff's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms, her testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. 13).  The ALJ reasoned as follows:

> The claimant and her husband testified that the claimant's bone growth has caused severe entrapment problems. While Dr. Rhame and Dr. Kolema noted the bone growth, neither described it as a problematic condition. Although there is an allegation of various side effects from the use of medication, the medical records, such as office treatment notes, do not corroborate those allegations. While the claimant alleged extreme inactivity (spending most of her days on the sofa), a review of the evidence of record fails to reveal any signs of muscular atrophy or similar findings. Moreover, in May 2003, Dr. Rawe noted that the claimant was power walking five miles a day in December 2003, [and] she was considering whether they challenged her knowing
>
> I find that the claimant suffers from a back condition, which is a severe impairment, but not to the point of being disabling. The medical evidence of record reveals that the claimant has

17

> a history of back pain and an MRI in January 2003 revealed a significant L4-5 disc herniation. On March 4, 2003, the claimant underwent [back surgery]. Since this operation, treatment records from Dr. Rawe, Dr. Rhame, Dr. Netherton and Dr. Kolehma reveal that the claimant has continued to report low back pain and she has received various injections and rhizotomies. However, despite her complaints of low back pain, the medical record fails to reveal evidence of any significant clinical findings. Although the claimant had an antalgic gait at times, examinations consistently revealed excellent strength (5/5) in the lower extremities with 2+ deep tendon reflexes and no muscle atrophy and negative straight leg raise [exam]. In April 2009, Dr. Kolehma reported that the claimant had experienced improvement in her overall ability to function, walk standing erect, participate in family activities and perform her daily routine and manage her home. He noted that the claimant was experiencing overall relief with the Botox injections, which lasted about 10 to 12 weeks. In December 2009, Dr. Kolehma noted that the injections continued to make a big difference. Nevertheless, although the claimant has required a surgical procedure for her back condition and has required various injections and rhizotomies for her ongoing pain, the record fails to reveal any significant complications. Therefore, I have limited the claimant to light work activity with only occasional climbing of ladders, ropes and scaffolds and occasional stooping, crouching and crawling, which I find consistent with the limitations from her back condition.
>
> I have further determined that the claimant would be limited to work with simple routine repetitive tasks based on her allegations of pain that would affect concentration.

(Tr. 13-14).

The plaintiff argues that the ALJ erred in failing to find credible her testimony as to her standing and walking limitations. In support of her argument, the plaintiff cites evidence showing that since her surgery in March 2003 she has required ongoing pain management with injections (pl. brief at 13-14). However, the mere existence of pain does not establish any specific functional limitations. Indeed, "pain is not disabling *per se*," *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986), and " 'disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.

Otherwise, eligibility for disability benefits would take on new meaning.' " *Ferrante v. Bowen*, No. 88-3907, 1989 WL 14408, at *4 (4th Cir. Feb. 7, 1989) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir.1983)). Furthermore, the plaintiff's argument overlooks the relevant point highlighted by the ALJ – that the plaintiff's treatment significantly alleviated her levels of limitation (Tr. 13-14 (citing Tr. 341-42)). *See Gross*, 785 F.2d at 1166 (noting that a symptom that can be reasonably controlled by medication or treatment is not disabling).  The plaintiff also overlooks that fact that the ALJ did find that her ongoing back pain limited her ability to stand and walk; he simply found that she was not limited to the degree to which she testified. As the level of standing and walking limitation the ALJ assessed finds support in the objective medical evidence and the state agency consultant's expert medical opinions, it is entitled to deference. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir.1984) (an ALJ is accorded deference as to determinations of a claimant's credibility).

Based upon the foregoing, this allegation of error is without merit.

### *Medical-Vocational Guideline 201.14*

Lastly, the plaintiff argues that the ALJ failed to consider that she was disabled under Medical-Vocational Guideline 201.14[5] because she is unable to perform light work (pl. brief 14).  The plaintiff maintains that the ALJ's RFC finding is flawed in that it finds her capable of the standing and walking required of light work.  The plaintiff argues that had the ALJ properly concluded that she did not retain such an ability to stand and walk, then Medical-Vocational Rule 201.14 would direct a finding of disabled as of her 50th birthday on July 12, 2005.  However, as set forth above, the undersigned finds that

---

[5]Grid Rule 201.14 provides that a person is disabled if he is limited to sedentary work, is closely approaching advanced age, is a high school graduate or more, and his past relevant work experience is skilled or semiskilled with skills that are not transferrable. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.14.

19

substantial evidence supports the ALJ's RFC finding for a range of light work. Accordingly, this allegation of error is without merit.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

January 3, 2014                                                         s/ Kevin F. McDonald
Greenville, South Carolina                                   United States Magistrate Judge