IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| RHONDA HUTTO BULL, | ) | |
| | ) | No. 6:12-cv-3197-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,[1] | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Carolyn Colvin's decision denying plaintiff's application for disability insurance benefits ("DIB"). Plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I. BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A. Procedural History

Plaintiff Rhonda Hutto Bull ("Bull") filed an application for DIB on February 7, 2010, alleging disability beginning on March 4, 2003. The Social Security Agency denied Bull's claim initially and on reconsideration. Bull requested a hearing before an administrative law judge ("ALJ"), and ALJ Edward T. Morriss held a hearing on March 3, 2011. The ALJ issued a decision on March 17, 2011, finding Bull not disabled under

---

[1] Carolyn W. Colvin became the Acting commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this lawsuit.

1

the Social Security Act. Bull requested Appeals Council review of the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On November 6, 2012, Bull filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on January 3, 2014, recommending that this court affirm the ALJ's decision. Bull filed objections to the R&R on January 21, 2014 and the Commissioner responded to Bull's objections on February 5, 2014. The matter is now ripe for the court's review.

### B. Medical History

Bull was born on July 12, 1955. Tr. 107. Bull experienced intermittent lower back pain in the years leading up to her alleged onset date. Tr. 174. In July 2002, Dr. Stephen Rawe of Charleston Neurological Associates noted that Bull's pain related to a central L4-5 disc protrusion. Tr. 176. At that time, Bull's impairment did not cause any significant nerve root compression, she was not a surgical candidate, and she was instructed to increase her functional activity and possibly pursue epidural steroid injections. Id. Bull's problems persisted, and on January 23, 2003, she was told that she could either continue with conservative care, with or without steroid injections, or pursue surgery. Tr. 177.

Bull elected to have surgery and underwent a lumbar inter-body fusion by Dr. Rawe on March 4, 2003. Tr. 193. By May 2003, Bull was power walking five miles per day. Tr. 178. Dr. Steven Bull, plaintiff's husband and treating physician, encouraged her to cut back on her walking because it was likely aggravating her back pain. Id. By September 2003, Bull's pain was limited to her lower back but was controlled with

medication. Tr. 179. In December 2003, Bull reported moderate discomfort in her lower back, but displayed good range of motion, no obvious weakness in her lower extremities, and straight leg raising was negative. Tr. 180.

After 2003, Dr. Mark Netherton of East Cooper Regional Medical Center examined Bull a number of times. Bull reported ongoing back, hip, and right leg pain ranging in severity between 2 and 6 on a pain scale of 1 to 10. Tr. 316-27, 389, 391. Bull was diagnosed with lumbar radiculitis due to ongoing lower back pain, for which she underwent a number of blocks, epidural steroid injections, and left sacroiliac joint injections. Tr. 221-36, 268-330, 373-85. On a number of occasions, Dr. Netherton noted that Bull had an antalgic gait. See, e.g., Tr. 317.

Dr. Kerri A. Kolehma of Coastal Physical Medicine provided Bull a number of Botox injections between 2005 and 2009. Tr. 341. The injections improved Bull's ability to function, walk standing erect, and participate in family activities. Id. Bull's relief typically lasted ten to twelve weeks. Id. Dr. Kolehma recommended that she continue to receive Botox injections every 90 days. Id.

Outside of the injections by Dr. Netherton and Dr. Kolehma, Bull was treated by her husband for her radicular pain from the time of her surgery until her hearing. Tr. 237-53; 370-72. Dr. Bull is a board certified family medicine physician.

On April 2010, Dr. Jim Liao reviewed Bull's medical records and offered his opinion regarding her residual functional capacity ("RFC"). Tr. 355-62. Dr. Liao opined that "[a]lthough functional evidence cannot be obtained for the time period in question, the continuous and ongoing treatment for pain along with L4-L5 fusion in 2002 warrants a light rating with [occasional] stoop/crouch/crawl and ladders/ropes/scaffolds

3

limitations." Tr. 362.  In June 2010, Dr. Lisa Clausen and Dr. Joseph Gonzalez also reviewed Bull's medical records and concurred with Dr. Liao's opinion.  Tr. 363-64.

On February 17, 2011, Dr. Bull offered his medical opinion about his wife's level of functional limitation since April 2003.  Citing her back pain, Dr. Bull opined that she could:  lift and carry up to ten pounds occasionally, but never more than ten pounds; sit for fifteen minutes, stand for ten minutes, and walk for ten minutes at one time without interruption; sit for two hours, stand for one hour, and walk for one hour in an eight-hour work day and would need to spend the remaining four hours laying down; frequently handle, finger, and feel; occasionally reach in all directions, push, pull, and operate foot controls; occasionally kneel and climb stairs or ramps; never climb ladders or scaffolds, balance, stoop, crouch, or crawl; never work at unprotected heights, around moving machinery, or near vibrations; occasionally operate a motor vehicle and be exposed to humidity and extreme heat and cold; and never travel alone or walk at a reasonable pace on rough or uneven surfaces.  Tr. 413-18.

On February 22, 2011, Dr. Netherton also offered his opinion regarding Bull's functional limitations.[2]  He opined that Bull could sit for one hour at a time before needing to walk for less than 15 minutes and could only sit for three hours in an eight-hour work day.  Tr. 422-23.  He further opined that Bull could stand or walk for one hour at a time before needing to lie down for 15 minutes and could only stand or walk for two hours in an eight-hour work day.  Tr. 423.  Dr. Netherton opined that normal work breaks would be insufficient to satisfy Bull's needs and that she would be absent more than three times per month due to her impairment.  Tr. 423-24.

---

[2] Dr. Netherton's opinion was submitted to the Appeals Council after the ALJ rendered his decision.  Tr. 4.

4

### C. Plaintiff's Testimony

At the hearing, Bull testified that she has been disabled since her back surgery on March 4, 2003. Tr. 25. She explained that she last worked as an administrative assistant at her husband's medical practice. Tr. 25-26. She also testified to prior work teaching algebra at Trident Technical College. Tr. 26-27.

Bull testified that the main reason she cannot work relates to problems with the muscles and nerves in her back. Tr. 27-28. She stated that her pain was chronic at a level of 8 or 9 out of 10. Tr. 29. She noted that she receives injections which would reduce her pain to a 5 out of 10 and give her "a little bit of life back." Id.

### D. ALJ's Decision

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Bull was disabled from March 4, 2003 through September 30, 2009. The ALJ first determined that Bull did not engage in substantial gainful activity during the period at issue. Tr. 11. Second, the ALJ found that Bull suffered from the following severe impairment: status post-lumbar herniated disc operation. Id. At step three, the ALJ determined that Bull's impairment did not meet or equal one of the listed impairments in the Agency's Listing of Impairments. Id.; see 20 C.F.R. Part 404, Subpt. P, App'x 1. Before reaching the fourth step, the ALJ determined that Bull had the RFC to perform light work, which involves lifting and carrying up to twenty pounds occasionally and ten pounds frequently, walking or standing at least six hours in an eight-hour work day, and sitting the remainder of the time. Tr. 12. The ALJ further found that Bull should be limited to simple, routine, repetitive tasks with only occasional climbing of ladders, ropes, and scaffolds and occasional stooping, crouching, and crawling. Id.

The ALJ found, at step four, that Bull was unable to perform any of her past relevant work. Tr. 14. Finally, at the fifth step, the ALJ found that Bull could perform jobs existing in significant numbers in the national economy and therefore concluded that she was not disabled during the period at issue. Tr. 15.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

## III.  DISCUSSION

Bull objects to the R&R on three grounds:  (1) the ALJ erred by failing to credit the conclusions of Dr. Bull, her treating physician; (2) the ALJ erred by failing to properly evaluate her subjective allegations of pain; and (3) the ALJ erred by failing to consider that she was disabled under Medical-Vocational Guideline 201.14.  The court considers each of these objections in turn.

### A.      Treating Physician Opinion

Bull's first objection to the R&R is that the magistrate judge improperly found no error in the ALJ assigning little weight to the opinion of Dr. Bull, her treating physician.  Pl.'s Objections 1.  Bull argues that the ALJ failed to consider evidence of her antalgic gait as support for Dr. Bull's opinions regarding standing, walking, lifting, and carrying.  Pl.'s Objections 4.

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 590.  In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."  Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors:  (1) whether the physician has examined the

applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In affording Dr. Bull's opinion little weight, the ALJ explained that he could find little support in the record for the limitations that Dr. Bull assessed and noted that no physicians other than Dr. Bull had concluded that Bull was unable to work. Tr. 14. The ALJ specifically noted that although Bull is status post lumbar spine surgery, "examinations have routinely revealed that the claimant had no weakness of the lower extremity muscle groups, negative straight leg raise, normal/good deep tendon reflexes,

and no muscle atrophy." Id.  The ALJ also noted that Dr. Bull was plaintiff's husband. Id.

As noted by the magistrate judge, three independent medical experts, Drs. Liao, Clausen, and Gonzalez, reviewed Bull's treatment records and concluded that she could perform light work activity. Tr. 355-62, 363-64. Their findings are consistent with the ALJ's RFC determination. Tr. 12. Additionally, in making his RFC determination, the ALJ specifically acknowledged that "although the claimant had an antalgic gait at times, examinations consistently revealed excellent strength (5/5) in the lower extremities with 2+ deep tendon reflexes and no muscle atrophy and negative straight leg raise." Tr. 13. Therefore, contrary to Bull's assertion, the ALJ did consider her antalgic gait.

The ALJ was not required to give Dr. Bull's opinion controlling weight because it was inconsistent with the opinions of three independent medical experts and other evidence in the record. Moreover, there is no indication that the ALJ dredged up specious inconsistencies in discounting Dr. Bull's opinion. Therefore, the court finds that the ALJ's determination that Dr. Bull's opinion is entitled to little weight is supported by substantial evidence.

Bull's first objection fails.

### B.     Credibility Determination

Bull's second objection to the R&R is that the magistrate judge erred in finding that the ALJ properly evaluated her allegations of pain in making his credibility determination. Pl.'s Objections 1. Specifically, Bull argues that the ALJ focused primarily on Dr. Rawe's May 2003 statement about power walking and failed to consider that her limitations became progressively worse after her 50th birthday. Id. at 5.

Determining whether an individual is disabled by pain or other symptoms is a two-step process. First, an ALJ must determine whether a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. See 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96–7p; Craig, 76 F.3d 585, 591-96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." Craig, 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p.

If an ALJ rejects a claimant's testimony about her pain or physical condition, he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific

10

to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

When considering whether an ALJ's credibility determination is supported by substantial evidence, the court does not replace its own credibility assessment for that of the ALJ; rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusion. Coleman v. Astrue, 2011 WL 3924187, at *15 (S.D. W. Va. Sept. 7, 2011); see Hays, 907 F.2d at 1456 (holding that in reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner). Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

The ALJ found that while Bull's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms, her testimony concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Tr. 13-14. To support this finding, the ALJ noted that the medical record contains no evidence of any significant clinical findings and, as discussed above, that examinations consistently indicated excellent strength in the lower extremities. Tr. 13. He further noted that while Bull alleges "extreme inactivity (spending most of her days on the sofa)," a review of the evidence of record fails to reveal any signs of muscular atrophy or similar findings. Tr. 13. Finally, the ALJ noted an examination by Dr. Kolehma in December 2009 in which she noted that injections were "making a big

difference," Tr. 345, and a letter written by Dr. Kolehma in April 2009 in which she indicated that "[b]y exam and patient report, Mrs. Bull has noted an improvement in her overall ability to function, walk standing erect, and to participate in family activities." Tr. 341.

The ALJ gave specific reasons, supported by the evidence in the case record, for his finding on credibility. Contrary to Bull's assertions, the ALJ did not focus primarily on Dr. Rawe's May 2003 statement, but also considered evidence from 2009 in reaching his decision. Therefore, the court finds that his credibility determination is supported by substantial evidence.

Bull's second objection fails.

### C.     Medical-Vocational Guideline 201.14

Bull's final objection is that the ALJ failed to consider whether Bull was disabled under Medical-Vocational Guideline 201.14 as of her 50th birthday. Pl.'s Objections 1. Bull argues that sometime after her 50th birthday, she was limited to sedentary work, that thus Guideline 201.14 directs a finding of disability. Id. at 7.

Guideline 201.14 provides that a person is disabled if she is limited to sedentary work, is closely approaching advanced age, is a high school graduate or more, and her past relevant work experience is skilled or semiskilled with skills that are not transferrable. 20 C.F.R. § 404, Subpt. P, App'x 2.

As set forth above, substantial evidence supports the ALJ's determination that Bull had the RFC to perform light work. Therefore, Guideline 201.14, which concerns claimants limited to sedentary work, is not applicable to Bull.

Bull's third objection fails.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 21, 2014**
**Charleston, South Carolina**